Good morning, may it please the court, Stephen Erb for the defendants and appellates, Kayo Oil Company and ConocoPhillips Company. This case has a number of procedural irregularities, which is the principal reason it is before this court, but behind those irregularities are a number of important substantive issues that, in our experience, have characterized ADA Title III repetitive litigation. And I want to talk about those substantive issues because the problem with this case is that the district court never looked at our evidence, never adjudicated the significance of our evidence as it relates to a defendant's ability to get prevailing party attorney's fees. This is a case where the lead plaintiff, Lynn Hubbard Sr., who has filed over 200 ADA Title III lawsuits, who incidentally, despite the fact that his case was dismissed, we believe in error, for refiling in state court, never pursued his claims in state court, and in fact has never filed another ADA Title III lawsuit since the day we put forth videotaped surveillance of this gentleman going into our convenience store in San Diego. The court or the court's clerks or whatever may want to review those DVD clips, which are at the back of the excerpts. You'll see a gentleman get out of a vehicle. He'll walk across the lot. He'll walk casually through the store. This is an individual who in 200 lawsuits has stated he requires the use of a wheelchair or a motorized scooter whenever he is in public. That videotaped surveillance shows that that's a blatant lie. It's a consistent fraud on the court. It was a fraud on us. We took the time, unlike 99% of defendants in these cases who often have to pay an extorted settlement demand, we took the time to gather evidence. Putting all that aside for the moment, I mean, part of the problem I've got with this case is that I don't know what happened. Procedurally or subsequently? Yes. I've got to figure out what happened first before we get to any kind of merits consideration because, you know, the district court granted or said it was granting the defendant's motion for summary judgment. Right. I'm not super sure whether that was intended to be on the merits or whether it was intended to be on the basis of mootness because it more or less indicated it was intended to be on the basis of mootness and later clarified that that was the intent. That's exactly correct. What happened procedurally, Your Honor? Plaintiffs moved for summary judgment first. Yes. They put all their evidence on the table. We refuted all of it and came forward with our evidence both by way of opposition and by way of cross-motion. Throughout our papers, we insisted that this case is not moot. There are a couple individual... Well, that's not so. Your own motion papers in part relied upon the fact that CAO had made adjustments to its property to rectify access issues and asked for at least a partial, if not complete, dismissal on the footing of mootness. No, we didn't. Your Honor, we asked for a determination of all those individual claims which we did not make changes with respect to, which we refuted. That may be true, but it is not true that you never asked for mootness. Well, part of this is nomenclature, Your Honor. Oh, it's not. Mootness is spelled M-double-O-T, and you said in your motion papers that part, at least, of the claim was moot. And so it's not honest to stand here and say that you never made a pitch with respect to mootness. That's all I'm saying. No. And how you just phrased it, Your Honor, is correct. You said part of our claim is moot. Yes. And when I'm talking about the nomenclature, in these ADA cases, you'll have between 15 and 30 individual prayers for relief. Recently, a panel of this Court referred to each individual prayer as a distinct claim. That has been done in other contexts. Even though it's lumped together as one count or one claim for relief in the complaint, it really breaks out to 15 different individual claims. Our position consistently throughout the papers was most of these claims are not moot. We're brought in expert testimony. We contested it on the facts. Yes, a few of them, which we viewed to be relatively immaterial, minor deviations from some standards, we did make changes, because it's very rare to find a property which is 100 percent compliant with this statute, given all the State and Federal regulations and the fact that many of these things have to be kept up. There's a maintenance factor that plays in. But, and I can explain for the Court. I can go through a list of all the things that they're expert in, their motion. Actually, I've done the same thing. And it appears to me that all but one of them probably was mooted. I mean, you've got, I've forgotten, there are like 15 or 16 separate claims of difficulty with access. And as to all but one of them, your papers indicate an adjustment. But, you know what, in a way, that's aside from the point. Because I still, I mean, I come back to where I started. And that is, I don't know how all this comes down at the end of the day. Because the district court clearly said it intended to dismiss on the basis of mootness. And I'm saying that, number one, that's error. If he had reviewed everything that's in the record. Number two, that doesn't justify the dismissal of the State law claims, which they had already conceded defeat on. Well, I don't know what happened with the State law claims. I mean, the district court, again, didn't say anything about them in the original order. And in its clarification order said, well, it wasn't going to exercise supplemental jurisdiction, which it certainly has license to do. Well, but first of all, in the original judgment order, the district court grants us judgment in full. There's no dismissal of the State law claims. There's no briefing on 1367C. Six months later, given the argument by the plaintiffs that he had to dismiss for want of jurisdiction, which is an argument the district court appeared to have adopted and said, well, I couldn't go forward with the State law claims. I don't have subject matter jurisdiction. They don't even pursue that argument up here because I call their attention to the Supreme Court's decision in Versado. And if it's later arising mootness, the court did have jurisdiction. And since all the cards were on the table, we had done all the work. That's one of those rare circumstances. And I realize, Your Honor, has written several decisions on 1367C. But this is one of those. There was another case out of this circuit where the plaintiff got a default and was reversed for abuse of discretion because the district court didn't follow through and finish up with the State law claims. That's the same thing here. They conceded defeat, and the district court abused its discretion by making us go back through all of this. And they never wanted to go across the street and pursue these claims, given the evidence we had shown them. They never pursued the claims. In fact, they unilaterally tried to dismiss improperly under 41A with prejudice. Kennedy. Counsel, would it have even been possible for the district court to properly enter a judgment, on summary judgment, if the whole claim had been moot? Would the court not be then divested of jurisdiction? There would be no more case in controversy. There would be no ability to enter a summary judgment at that point if the whole matter had been moot? If the whole matter had been moot, the district court, in my judgment, still has jurisdiction to determine the State monetary damages claims. But if the mootness is all of the injunctive relief under State and federal, those would be out. Those should have been dismissed if they were found to be moot. And then he could have adjudicated with finality the State monetary damages. My point here, I'm actually trying to be helpful to you. I'm trying to get you to understand that the other side really can't have it both ways, because either the whole case was moot, in which case there could never have been a lawful summary judgment, or there was some element of the case that was still open, in which case the whole case is not moot, and then the court could enter a summary judgment. Isn't that a correct statement of law? That is correct, and that's what I felt the district court did the first time. I don't think – I'm going to reserve – can I reserve my last minute for rebuttal? Thank you. Mr. Hubbard? Good morning, Your Honors. Scott Hubbard for the appellees. Does the panel have any questions for me before I begin? I do. Yes, Judge Snow. I'm – this case has troubled me. I have read the record extensively, and I see Trevor, I see Molsky, I see a pattern of what appears to be abuse of the Americans with Disabilities Action statute. It's our job as judges to make certain that people who are truly disabled and people who don't comply with the statute are required to do so as brought by lawsuits, and I'm troubled by what appears to be a pattern here, and I gather this is a family enterprise of making some claims that may or may not be true. I guess I'm interested in your perspective as counsel. Why is this different than Trevor? Why is this different than Molsky? Filing hundreds of ADA actions where, according to what the record shows – is it your grandfather or your father? It's my grandfather. Your grandfather claims to be disabled, yet he walks perfectly fine, according to the video. They claim to have bought gasoline at this place over 200 times, if I recall correctly, and yet there was only one receipt, and then when the deposition was taken, he couldn't remember ever getting out of the van or doing anything. It just seems like a sham. Why isn't it? Well, part of this is – I'm going to give you the lawyer answer first, and then I'm going to give you the grandson answer first. First, dealing with the Molsky issues. We've been vetted by numerous district judges. We've included them in our reply brief when we've basically put all of our cards on the table and we've said these are the procedures that we practice, we learn from our mistakes. I say that with respect to Dorn v. Vicorp and Pickering Pier 1, when they said you need to start including facts. What are you alleging? And so we send out – he calls them runners. We call it Rule 11 investigations to confirm that the places do in fact have barriers. Gosh, this is going to run over 10 minutes. Second, when you look to the general pleading requirements of Rule 8a, disability is not – being disabled isn't an all or nothing deal. There are levels of disability, substantial levels of disability. Once again, I have to return to Hubbard v. Rite Aid, where the issue was squarely put in front of Judge Hayes, who has ruled against us more than not, and even Judge Hayes said that we're disabled, or assuming my grandparents are disabled. With respect to the grandson issue, well, let me just summarize that by saying we've been looked at and we try very, very hard to fulfill the spirit of the ADA, the spirit of the law. We send letters. We try to send letters. Not all of our clients listen to us, but we try to send letters, certified mail. We do the site inspections. We include a copy of the complaints. Our experts said there were barriers there. They admitted that they made further modifications after reading our expert report, which means that they made modifications before he came out there. There was sufficient there under SCAF and Molsky v. Evergreen to support a claim for barricade. Let's admit that. Let's say that there were some genuine claims. Otherwise, they wouldn't have fixed them. But there were still some that you claimed that they didn't make. So why was the case moot at that point? No, actually, we thought Judge Reimer said that 16 out of the 17 barriers were remediated. I don't count them that way. I think there are at least five, according to the original report, where nothing was ever done. We thought they were all 17 fixed, candidly. When we went out there, that's why we agreed it was moot. We had a summary judgment on calendar first. Were you seeking damages? We're not. Not on any of the claims? Not anymore. Not anymore. At the time we were seeking damages. Then how could it be moot? I understand that the injunctive relief requests, of course, are moot, and that would take out all your federal claims. But I don't get how you're – I mean, if I remember correctly, this is like round three. I've had with both – with this same case, Taco Bell, same judge. I mean, this is just deja vu because almost exactly the same thing happened. As I recall, we remanded that and said just start from ground zero and get this thing right. I think it was Del Taco. It was Del Taco. Del Taco, not Taco Bell. I remember that opinion. It was Mark Potter. But that said, this isn't my first trip to the rodeo, and I know that district judges like to clear these ADA cases off their dock at once. The injunctive – the federal question becomes moot. So when you look at our certificate of non-opposition to their motion for summary judgment, once we thought injunctive relief was moot, we said, you know what, Judge? We know that this is what happens. The federal question is moot. We know it's the pattern of practice to decline supplemental jurisdiction. We're doing a certificate of non-opposition. That's fine. What about state damage claim? I mean, I just don't get how that could be scooped up in that. Well, if the court wanted to maintain supplemental jurisdiction over the state law damage claims, the court could. Which it appeared to have done in the original order because it didn't mention anything and it didn't enter any kind of an order dismissing the supplemental claims for lack of – just because he didn't want to, but he could have done. When you look at our certificate of non-opposition and when you compare it to the order – the clarifying order, you'll see that what we agreed to or why we did our certificate of opposition, non-opposition, is identical to the order that he intended. I don't want to say identical because the language differs, but it's the same subject matter. Isn't what really happened here that you ran into somebody that decided they were going to fight rather than pay and you decided let's get out of here while we can? No, Judge. Believe it or not, we run into people who are willing to fight more often than not now. It's very, very hard to be an ADA plaintiff's lawyer in this environment. Do you represent ADA plaintiffs other than your grandparents? Oh, yes. We have quite a few. As a matter of fact, the dockets are replete with our published opinions. I know that. I now do ERISA law, candidly. I do the Ninth Circuit appellate work because I really enjoy it. We're delighted to see you. But there's one last point I want to talk about. And this dealt with just kind of to come full circle. You asked me why we didn't refile in state court. Perhaps before you go to there, can I ask this question? Of course. Arguendo. If we find that this case was not moved and we send it back to the district court, it seems like under our most recent Hubbard case, I'm going to get it right here, Hubbard v. Sobrek, LLC, that either under the state law statutes, the fee-splitting statutes, or under the ADA, the only way that a defendant in an ADA action can recover attorney fees is if the underlying action was frivolous. Why wasn't this a frivolous action? There's also parallel authority down in the district courts. The one that springs to mind is White v. Divine Investment, which also came up to the Ninth Circuit, which said that if you allege ADA claims and the defendants remove the claims, basically admit that their facility was substantially not in performance with the ADAC and you do that by making the changes, then it's not frivolous. So basically the fact that they did some prompt remediation in effect takes it out of the frivolous category. There is authority down at the district court saying that. Which case are you referring to? I just did this in White v. Divine Investment, stands out in my mind. With permission of the court, can I submit a list? That 28-J letter. 28-J letter, yes. But from a practical standpoint, there's something, for lack of a better term, gross, about disabled plaintiffs bringing federal lawsuits, alleging barriers, legitimate barriers. The defendants remove those barriers, move the case out of court, and then bring a motion for fees and costs, arguing that the barriers were frivolous without merit. And if they wanted to advance that position, I'm speaking fast because I've got 30 seconds. If they wanted to advance that position, they shouldn't have argued it was moot in the first place. They invited the error. If they did, the judgment was on the merits. Excuse me, there was a judgment entered. They never appealed it. If they argued that the court shouldn't have entered it was moot in the first place, at least I don't think they do. I'm running through their four lists of issues. I don't think they did. And so, candidly, the court's opinion was clear under Rule 68 when he filed the clarifying point. And I really, I've got five seconds. May I just speak about it? You're answering my question, so go ahead. Fair enough. We never conceded defeat. We were prepared to do a summary judgment on the merits when they told us it was moot. It appeared moot. We withdrew it. We never filed in state court, and this is the grandson talking now. We never refiled in state court, and with respect to my grandparents, although I think there were a couple of egregious situations that happened recently that we just kind of had to, because they're 80 years old and their minds, mid-80s, and their minds just aren't there anymore. And it pains me to see that as a grandson, but as a lawyer, I just have to say, I'm sorry, I know you want to fight the good fight, and I know you want to right these wrongs, but we just can't. You've got to take a step back. Thank you, Mr. Hubbard. Thank you. That last comment is somewhat disingenuous, because if the court looks at the docket. Can I just say something here? Absolutely. I found the personal attacks, the ad hominem attacks in these briefs to be most unbecoming, counsel. They do not help your case. They don't help his case. We're just interested in the law here. So if you'll just get off that kick about disingenuousness and all that stuff, let's just hear the law. And I, for one, would be interested in knowing your response to your opposing counsel's comment. Why is this a frivolous action in light of the fact that your client changed a number of things in this particular store, presumably in response to the list that was sent to you? Right. Your Honor, what we changed is we changed a disabled parking sign from one plate to two. Right. Four district courts have told Mr. Hubbard it's not required, but we did it nevertheless. Would you have done it had he not sent something? No, because the law doesn't require it. But we don't feel we should tie up the district court's time litigating that immaterial issue. So it was a selfless act on your part? You were just trying to help the public benefit by making the changes that you did? I don't think it makes sense, Your Honor, to fight over a sign. It takes a doubt. Here's what we did not do. We did not paint a blue crosswalk from the gasoline pumps to the front of the store as requested. We did not replace it. I know there were a few that were not done, but there were six or seven that were done. Well, first, my response to that, Your Honor, is Lynn Hubbard Sr. doesn't have standing. He doesn't have statutory standing. He doesn't belong in the court asking for $4,000 every time he visits a place of public accommodation claiming he's been discriminated against because he walks as well as anyone. You're talking about a different issue now. All right. Well, I still believe you know I'm going to run out of time. I don't have any more questions. I don't know what my colleagues are doing. Finally, with respect to whether some of the claims may not have been frivolous, we contend the rest were under Tudor v. Saliba, 452 F. 3rd, 1055. The rule that's followed in this circuit is that the court will allocate between the frivolous and non-frivolous claims, awarding prevailing party fees on the frivolous, even if there are a few non-frivolous. We contend the entire action. Thank you, Your Honor. Thanks very much. The matter just argued will be submitted and will next hear from you in the bell promise. Thank you.
judges: Rymer, Smith, Korman